OPINION
{¶ 1} On October 31, 2001, Carole Staley was charged by indictment with three theft offenses involving as victims: Bobbie Smith on January 24, 2001; Betty Gassaway on January 24, 2001; and Charlotte Bradshaw on January 25, 2001. On March 6, 2002, Staley was charged by indictment with additional theft offenses involving as victims: Joann Wagner on January 31, 2001; Wayne Smith on January 31, 2001; and Viola Montgomery on January 31, 2001.
 {¶ 2} Staley moved to suppress identification evidence, and her motion was heard on April 3 and April 17, 2002. On April 19, 2002, Staley was charged by indictment with three counts of burglary, involving the same victims — Smith, Gassaway, and Bradshaw — as were named in the October 31, 2001, indictment and allegedly occurring on the same dates as the alleged theft offenses.
 {¶ 3} The trial court overruled the motion to suppress on May 24, 2002. Staley entered a no contest plea to one count of burglary involving Bobbie Smith on June 5, 2002. The trial court found Staley guilty and immediately sentenced her to two years imprisonment. The remaining counts were dismissed.
 {¶ 4} Staley asserts as error the overruling of her motion to suppress.
 {¶ 5} We note at the outset that the trial court only expressly overruled the motion to suppress as it pertained to identifications by Wayne Smith, Viola Montgomery, and Betty Gassaway.
 {¶ 6} The trial court expressly declined to rule as to the identification made by Charlotte Bradshaw because she was unavailable to Staley as a witness due to illness. Nor did the trial court discuss the identification testimony of Charles Jackson which related to the offenses against Bradshaw.
 {¶ 7} Bobbie Smith and Joann Wagner were unable to identify Staley, nor did anyone else identify Staley in connection with the offenses against Smith and Wagner.
 {¶ 8} We agree with the trial court that there was no impropriety in the manner that the police obtained identification of Staley from Wayne Smith, Viola Montgomery, and Betty Gassaway.
 {¶ 9} Wayne Smith had been Staley's live in boyfriend with whom he was severing ties at the time he accused her of stealing from him. The police showed him a photograph of Staley simply to be sure they understood precisely whom he was accusing.
 {¶ 10} Viola Montgomery was acquainted with Staley and identified Staley to the police with a Crime Stoppers' Ten Most Wanted photograph she saw in a local newspaper.
 {¶ 11} There was no police impropriety in obtaining either of these identifications. Nor was there any impropriety in obtaining Betty Gassaway's identification of Staley.
 {¶ 12} The police showed Gassaway a six-photo array after reading to her the standard photographic show-up instructions. Sergeant (then detective) Keller, who exhibited the photo array to Gassaway expressly stated that he did not influence Gassaway's selection of Staley's photo from the array. We have examined the six-photo array and find nothing unduly suggestive — or at all suggestive for that matter — about it.
 {¶ 13} We agree with the State that there is nothing to review as to the identification by Charlotte Bradshaw, which was based on her being shown a single photograph of Staley, because the trial court expressly declined to decide the motion to suppress as to her identification. Hence, the trial court's non-decision could not have been a factor in Staley's decision to plead no contest to the burglary charge of Bobbie Smith.
 {¶ 14} That leaves us with the identification by Charles Jackson. Except as to Wayne Smith, Staley's m. o. in committing the indicted offenses was to gain admittance into the victims' residences under the guise of wanting to sell them something, distract the victims, steal any valuables within reach, and then flee.
 {¶ 15} Charles Jackson was a downstairs neighbor of Bradshaw and appears to have been approached by Staley just before or just after Staley victimized Bradshaw.
 {¶ 16} According to Sgt. Keller, he showed Jackson a single photo of Staley soon after Bradshaw had been victimized and close in time to when Bradshaw herself had identified Staley from the same photo. It is unclear from Sgt. Keller's testimony whether Jackson made an identification from the photo. (Both parties to this appeal understand Sgt. Keller to have testified that Jackson did not make an identification from the photo).
 {¶ 17} Jackson testified as a defense witness that he identified Staley as she sat in a police cruiser soon after Bradshaw was victimized. He did not recall being shown a photograph by the police.
 {¶ 18} Although the trial court did not discuss Jackson or his testimony, the usual assumption is that if the trial court overrules the motion to suppress, the testimony of an unmentioned identification witness is admissible at trial.
 {¶ 19} The circumstances of Jackson's identification are not clear from the hearing testimony except that his identification occurred close in time to the theft from Bradshaw, and Jackson himself had been approached by the person who victimized Bradshaw. There is usually no constitutional impropriety in a one-person show up in situations like this. See State v. Madison (1980), 64 Ohio St. 322, 331-2.
 {¶ 20} In any event, we doubt that Staley's decision to plead no contest to a single count of burglary in return for a promise by the trial court of a minimum sentence and dismissal of the remaining eight charges — consisting of two second degree felonies, four fifth degree felonies, and two first degree misdemeanors — was influenced by the possibility of Jackson's testifying against him at trial. From the testimony at the suppression hearing, it is apparent that impressive circumstantial evidence implicated Staley in all of the indicted offenses for which there was no direct identification evidence. Accordingly, any error in not suppressing Jackson's testimony was harmless beyond a reasonable doubt.
 {¶ 21} The assignment of error is overruled.
 {¶ 22} The judgment will be affirmed.
BROGAN, J. and GRADY, J., concur.